UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FREDERICK E. BRAXTON, | ) |
| Petitioner, | ) ) ) |
| v. | ) NO. 3:20-cv-00251 |
| STATE OF TENNESSEE, | ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Frederick E. Braxton filed a pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254, asserting four claims. (Doc. No. 1). Respondent filed a Motion to Dismiss the Petition as untimely (Doc. No. 10), and Petitioner filed a Response (Doc. No. 21). For the following reasons, one claim is not cognizable, three are untimely and not subject to an equitable exception, and this action will be dismissed.

**I.     Background**

In October 2008, a Davidson County jury found Petitioner and a co-defendant guilty of the attempted second-degree murder of James Williams. (Doc. No. 9-1 at 72–73); Braxton v. State, No. M2018-00443-CCA-R3-ECN, 2018 WL 6047696, at *1 (Tenn. Crim. App. Nov. 19, 2018). The court sentenced Petitioner to a 19-year term of imprisonment at 35% release eligibility. (Doc. No. 9-1 at 72). The Tennessee Court of Criminal Appeals (TCCA) affirmed the judgment. State v. Braxton, No. M2009-01735-CCA-R3-CD, 2011 WL 3809773, at *1 (Tenn. Crim. App. Aug. 26, 2011). On January 10, 2012, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. (Doc. No. 9-13).

Petitioner did not file a state post-conviction petition. On November 13, 2017, however, Petitioner filed a petition for a writ of error coram nobis alleging actual innocence, accompanied by an affidavit from James Williams who recanted his trial testimony identifying Petitioner as one of the individuals who shot him. (Doc. No. 9-14 at 43–50). The coram nobis court held an evidentiary hearing (Doc. No. 9-15), heard testimony from Williams, and determined that Williams's recantation was not sufficiently credible to grant relief. (Doc. No. 9-14 at 90–98). The TCCA affirmed, and the Tennessee Supreme Court denied Petitioner's request for discretionary review. Braxton, 2018 WL 6047696. On June 24, 2019, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. Braxton v. Tennessee, 139 S. Ct. 2760, 2019 WL 2124271 (2019).

On March 20, 2020, Petitioner filed a habeas corpus petition in this Court by declaring under penalty of perjury that he placed it in the prison mailing system on that date. (Doc. No. 1 at 14); Miller v. Collins, 305 F.3d 491, 497–98 (6th Cir. 2002) (citing Houston v. Lack, 487 U.S. 266 (1988) (footnote omitted)). Petitioner asserts four claims: (1) actual innocence; (2) insufficient evidence; (3) the trial court erred by allowing testimony regarding his prior incarceration; and (4) due process. (Doc. No. 1 at 5–10).

**II. Analysis**

There is a one-year statute of limitations for filing federal habeas corpus claims. 28 U.S.C. § 2244(d)(1). This one-year period begins to run "from the latest of" four dates, two of which are relevant here. Id. Under subsection (A), the limitations period begins on the date that "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A). And under subsection (D), it begins on the date that "the factual predicate of the claim or claims presented could have been discovered through the exercise of due

2

diligence." Id. § 2244(d)(1)(D). The limitations period is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review." Id. § 2244(d)(2).

### A. Claim 1—Timely, but Non-Cognizable

In Claim 1, Petitioner asserts that he is actually innocent. (Doc. No. 1 at 5). This claim appears to be based on the October 2017 affidavit of James Williams, the shooting victim in this case, in which Williams stated that he lied at trial about Petitioner being at the scene of the shooting. (Id. ("I was not there.")); Braxton, 2018 WL 6047696, at *5–7 (summarizing Williams's affidavit and testimony). The Court therefore assumes that Williams's affidavit is "the factual predicate" of Claim 1 and that Petitioner exercised "due diligence" in discovering this predicate, see 28 U.S.C. § 2244(d)(1)(D), based on the state court's finding that Petitioner "was reasonably diligent in discovering Mr. Williams's recantation." Braxton, 2018 WL 6047696, at *9. Accordingly, subsection (D)[1] of the statute of limitations applies to Claim 1.

Claim 1 is timely under subsection (D). The one-year period to file Claim 1 started running in October 2017, when Williams signed the recanting affidavit. The period stopped running no more than 1 month later, in November 2017, when Petitioner filed a state coram nobis petition. The period remained tolled through June 2019, when the United States Supreme Court denied his petition for a writ of certiorari. And it was no more than 10 months later, in March 2020, that Petitioner filed the habeas corpus petition including Claim 1 in this Court. Petitioner therefore used no more than 11 months of the 1-year limitations period for Claim 1.

Claim 1, however, cannot be an independent basis for habeas corpus relief in federal court. The Court must summarily dismiss legally insufficient habeas claims. See McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing Habeas Rule 4) ("Federal courts are authorized to dismiss summarily

---

[1] Not, as Respondent assumes, subsection (A). (See Doc. No. 11 at 3–4).

3

any habeas petition that appears legally insufficient on its face."). And the Sixth Circuit has "repeatedly indicated" that freestanding actual innocence claims, like Claim 1, "are not cognizable on habeas" review. Smith v. Nagy, 962 F.3d 192, 207 (6th Cir. 2020) (citing Cress v. Palmer, 484 F.3d 844, 854 (6th Cir. 2007)). Claim 1 will be denied for this reason.

Nonetheless, "a proper showing of actual innocence" may allow "a prisoner whose claim may otherwise be barred by various federal or state procedural rules" to "'have his federal constitutional claim considered on the merits.'" Penney v. United States, 870 F.3d 459, 462 (6th Cir. 2017) (quoting McQuiggin v. Perkins, 569 U.S. 383, 392 (2013)). The Court will consider Petitioner's actual innocence claim in that context below.

### B. Claims 2, 3, 4—Untimely

In Claims 2, 3, and 4, Petitioner asserts trial-based claims.[2] Subsection (A) of the statute of limitations therefore applies, and the Court must determine "the date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A).

The Tennessee Supreme Court denied Petitioner's application for permission to appeal on January 10, 2012. The judgment became final 90 days later, when the "time for filing a certiorari petition" in the United States Supreme Court expired. See Jimenez v. Quarterman, 555 U.S. 113, 119 (2009) (quoting Clay v. United States, 537 U.S. 522, 527 (2003)). That date was April 9, 2012. The limitations period started running the next day, Fed R. Civ. P. 6(a)(1)(A), resulting in a federal habeas corpus deadline of April 10, 2013.

---

[2] Claims 2 and 3 assert insufficient evidence and trial-court error, respectively—both clearly trial-based claims. Claim 4 is labelled "Due Process," and its supporting facts are unclear. However, given the reference to "harmless error" in the supporting allegations (Doc. No. 1 at 10 ("A reviewing court should have been able to declare a belief that it was a harmless error beyond a reasonable doubt.")), Claim 4 appears to be an extension of Claim 3. That is because Claim 3 asserts that the trial court erred by allowing testimony on the timing of Petitioner's prior incarceration, and when Petitioner raised that claim on direct appeal, the TCCA found that the testimony's admission was harmless error. Braxton, 2011 WL 3809773, at *15. The Court therefore construes Claim 4 as an assertion that the TCCA's ruling on this issue was itself in error.

4

Petitioner filed his federal habeas petition on March 20, 2020—nearly 7 years later. And Petitioner's November 2017 state coram nobis petition did not have "a tolling effect because [it was] filed after the limitations period had expired." Columbert v. Brewer, No. 18-1339, 2018 WL 4621951, at *2 (6th Cir. July 5, 2018) (citing Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003)). In other words, the coram nobis proceedings did "not 'revive the limitations period' or 'restart the clock at zero'" for Claims 2, 3, and 4. Eberle v. Warden, Mansfield Corr. Inst., 532 F. App'x 605, 609 (6th Cir. 2013) (quoting Vroman, 346 F.3d at 602). Accordingly, these three claims are untimely.

### 1. Equitable Tolling

The "one-year limitations period is not a jurisdictional bar and is subject to equitable tolling in certain instances." Ata v. Scutt, 622 F.3d 736, 741 (6th Cir. 2011) (citing Holland v. Florida, 560 U.S. 631, 645 (2010)). A petitioner seeking equitable tolling bears the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Equitable tolling is applied "sparingly." Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 749 (6th Cir. 2011) (quoting Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010)).

Liberally construing the Petition, Petitioner asserts two potential bases for equitable tolling. Neither has merit. First, Petitioner asserts that he did not understand the legal process following his direct appeal. (Doc. No. 1 at 4, 7, 10–11, 13). But it is well settled that "ignorance of the law" and "unfamiliarity with the legal process" are "not sufficient to warrant equitable tolling." Harvey v. Jones, 179 F. App'x 294, 299 (6th Cir. 2006) (internal citations and quotation marks omitted).

5

Second, Petitioner asserts that the retained attorney who represented him on direct appeal withdrew as soon as he received full payment. (Doc. No. 1 at 4, 6–7, 9). "[E]gregious cases involving an attorney's failure to satisfy professional standards of care may constitute extraordinary circumstances." Robertson, 624 F.3d at 784 (citing Holland, 560 U.S. at 648–51). This may include a situation where "an attorney abandons his client without notice." Maples v. Thomas, 565 U.S. 266, 281 (2012). "Abandonment occurs where, '[h]aving severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative." Myers v. Osborne, No. 17-5284, 2018 WL 4215638, at *3 (6th Cir. Apr. 12, 2018) (quoting Maples, 565 U.S. at 281). Here, however, the record is simply inconsistent with abandonment. The attorney in question filed Petitioner's direct appeal brief[3] (Doc. No. 9-10) and the TCCA considered it on the merits. This sequence of events does not reflect professional misconduct of any kind, and it certainly does not justify equitable tolling. See Young v. Westbrooks, 702 F. App'x 255, 259–66 (6th Cir. 2017) (distinguishing Maples, 565 U.S. 266) (explaining that post-conviction counsel did not "abandon" habeas petitioner where counsel filed a brief that was considered on the merits).

In addition to a lack of extraordinary circumstances, Petitioner also has not demonstrated that he was reasonably diligent in pursuing his rights regarding Claims 2, 3, and 4. These three claims are untimely by nearly 7 years—well beyond an amount of time that the Sixth Circuit has previously considered to be "excessive and inappropriate for the application for equitable tolling."

---

[3] It also appears that this attorney represented Petitioner in his effort to secure discretionary review in the Tennessee Supreme Court. The case number for this proceeding is listed on the order denying relief in the record filed by Respondent. (Doc. No. 9-13). And a search of the Tennessee Appellate Case Search database using this case number reflects that this attorney is listed as Petitioner's counsel for this proceeding. See https://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=37431&Number=True (last visited Mar. 11, 2021). The Court takes judicial notice of this information. See United States v. Ferguson, 681 F.3d 826, 834 (6th Cir. 2012) (quoting 21B Charles Alan Wright, et al., Federal Practice and Procedure § 5106.4 (2d ed. 2005)) ("Judicial records may sometimes be properly noticed to show the acts of the parties or other actors in the litigation; e.g., that a complaint was filed, that return of service was made, or that stipulations were entered into.").

See Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 463–64 (6th Cir. 2012) (citing Robinson v. Easterling, 424 F. App'x 439, 443 (6th Cir. 2011)) (finding a 3-year delay to reflect a lack of diligence); Robinson, 424 F. App'x at 443 (citations omitted) ("[T]his Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half.").

For all of these reasons, the doctrine of equitable tolling does not permit the Court to look past the untimeliness of Claims 2, 3, and 4.

### 2. Actual Innocence

Finally, returning to Petitioner's actual innocence claim, a credible assertion of actual innocence may serve as a gateway for a federal habeas court to review the merits of otherwise untimely claims. Souter v. Jones, 395 F.3d 577, 588 (6th Cir. 2005) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). This gateway "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 569 U.S. at 394–95 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). The United States Supreme Court has stated that "the actual innocence exception should remain rare and only be applied in the extraordinary case." Souter, 395 F.3d at 590 (quoting Schlup, 513 U.S. at 324) (internal quotation marks omitted).

Here, Petitioner's actual innocence claim is based on victim Jason Williams recanting his trial testimony that Petitioner was one of the two people who shot him. Williams recanted this testimony through an October 2017 affidavit, and then again at a subsequent evidentiary hearing in state court.

The Sixth Circuit has explained that a witness "recanting [his] trial testimony is looked upon with extreme suspicion." Owens v. Rewerts, No. 20-1356, 2020 WL 6286308, at *3 (6th Cir. Aug. 26, 2020) (citing United States v. Willis, 257 F.3d 636, 645 (6th Cir. 2001)). Therefore, a

7

witness's recanting testimony "rarely provide[s] a basis, on [its] own, for concluding that a petitioner is actually innocent of his convictions." Id. (citing McCray v. Vasbinder, 499 F.3d 568, 575 (6th Cir. 2007)); see also Welsh v. Lafler, 444 F. App'x 844, 850 (6th Cir. 2011) (quoting Bower v. Curtis, 118 F. App'x 901, 908 (6th Cir. 2004)) ("This Circuit has previously held that '[e]ven if accepted, a post-trial recantation is generally not sufficient to grant habeas relief absent constitutional error.'").

Additionally, in a federal habeas proceeding, a state court's determination that a recanting "affidavit lacked credibility is presumed correct unless rebutted by clear and convincing evidence." Gipson v. Haas, No. 18-1298, 2018 WL 2251730, at *2 (6th Cir. May 16, 2018) (citing 28 U.S.C. § 2254(e)(1)); see also Richardson v. Lord, 7 F. App'x 1, 2 (2d Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)) ("[T]he factual determination of the state court, that the recantation and supporting affidavits were not credible, is entitled to the presumption of correctness.").

The coram nobis court thoroughly considered Williams's recantation, discredited it, and denied relief. (Doc. No. 9-14 at 90–98). The TCCA affirmed the court's credibility determination as follows:

> Mr. Williams provided inconsistent testimony regarding his motive for recanting his trial testimony. Although Mr. Williams testified that he was "eaten up" when the Petitioner was convicted in 2008, Mr. Williams requested the maximum punishment at the sentencing hearing. Mr. Williams also testified that he began to feel guilty about his trial testimony when Mr. Williams was convicted in 2010 of a drug-related offense and ordered to serve his sentence in confinement. Mr. Williams's conviction occurred approximately two years after the Petitioner's trial, and Mr. Williams did not recant his testimony until 2017. Likewise, Mr. Williams was concerned about the statute of limitations for aggravated perjury and refused to identify the second perpetrator. Mr. Williams stated he had "made peace" with the person involved in the shooting, although Mr. Williams's initial reaction was to exact vengeance upon the people who shot him without involving the police. Mr. Williams admitted that the prosecutors did not pressure or coerce him to testify against the Petitioner and only wanted him to be truthful. The court's credibility determination was supported by the record and was not an abuse of discretion. See Johnson [v. State], 370 S.W.3d [694,] 700 [(Tenn. Crim. App. 2011)].

Braxton, 2018 WL 6047696, at *10.

The Court agrees with the state court's credibility determination, as it rests on four sound premises. First, Williams's explanation of how and why he came forward was inconsistent. As for how, Williams stated in the affidavit that he contacted Petitioner's family (Doc. No. 9-14 at 48), but he testified at the evidentiary hearing that Petitioner's younger brother first reached out Williams's uncle at a cookout. (Doc. No. 9-15 at 23–27). As for why, Williams stated in the affidavit that he wanted to "make it right" and request "forgiveness" "after years of 'bad karma.'" (Doc. No. 9-14 at 48–49). But he testified at the hearing that being responsible for "put[ting] an innocent man in prison" had been "eating [him] up since the day it happened" (Doc. No. 9-15 at 4–5, 13, 15–16), which was in October 2008, despite asking that Petitioner receive the maximum 20-year sentence on his victim impact statement. (Id. at 45–46). And Williams testified, separately, that he did not begin to feel the need to come forward until Williams, himself, was imprisoned (id. at 13, 31–32), which was in June 2010 (id. at 10). These inconsistencies cast doubt on Williams's recantation. See Welsh, 444 F. App'x at 850 (stating that a recanting affidavit was "troubling because it include[d] inconsistencies").

Second, Williams testified at the evidentiary hearing that he "was under the impression" that the statute of limitations for aggravated perjury had expired. (Doc. No. 9-15 at 8, 51–52). And as the Sixth Circuit has explained, postconviction statements that exculpate a defendant are particularly suspect where the person making the statement faces no "adverse consequences" and does not "endanger[] his own interests" by doing so. See Allen v. Yukins, 366 F.3d 396, 405–06 (6th Cir. 2004).

Third, Williams testified that he knew who the second shooter was, but he refused to name the shooter because the two had "since made peace." (Doc. No. 9-15 at 19–22). Petitioner points

9

out William's testimony that he had previously shot the other shooter (id. at 20), and Petitioner thus theorizes that Williams's refusal to name the shooter was due to a concern about being "prosecuted for attempted murder of his unnamed assailant." (Id. at 6–7, 9, 11). This argument, while creative, is an after-the-fact rationalization that Williams did not actually advance at the hearing. The Court will not assume an explanation for Williams's failure to identify the second shooter that Williams did not provide when given the opportunity.

Fourth, Williams's recantation occurred about 9 years after his incriminating trial testimony. The Court "may consider how the timing of" an actual innocence claim "bear[s] on the probable reliability of" the claim. McQuiggin, 569 U.S. at 399 (quoting Schlup, 513 U.S. at 332). And here, Williams testified that he felt remorse for his allegedly false trial testimony in either October 2008, when Petitioner was convicted, or June 2010, when Williams was imprisoned. Either way, Williams did not explain why he waited to recant his testimony until October 2017. This "unexplained delay" is another factor reflecting that Petiotioner has not "made the requisite showing" of actual innocence. Id.

In sum, Petitioner has not demonstrated that this is one of the few extraordinary cases that support a finding of actual innocence as a gateway to review otherwise untimely claims.

**III. Conclusion**

For these reasons, Petitioner is not entitled to relief under Section 2254. Respondent's Motion to Dismiss (Doc. No. 10) will be granted, and this action will be dismissed.

Because this constitutes a "final order adverse to" Petitioner, the Court must grant or deny a certificate of appealability (COA). Habeas Rule 11(a). A COA may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the

district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Dufresne v. Palmer, 876 F.3d 248, 253 (6th Cir. 2017) (quoting Slack, 529 U.S. at 484).

For the reasons stated throughout the Court's analysis, the Court concludes that Petitioner has not satisfied these standards and will deny a COA.

An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE